97237-117173
972649

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PPC VENTURES INC.** | ) | |
| 19300 Shaker Boulevard | ) | **CASE NO: 1:08CV0770** |
| Cleveland, Ohio 44122, | ) | |
| | ) | **JUDGE: JUDGE GWIN** |
| **and** | ) | |
| | ) | **COMPLAINT FOR DECLARATORY** |
| **TETON CAPITAL GROUP, LLC** | ) | **JUDGMENT, BREACH OF** |
| 19300 Shaker Boulevard | ) | **CONTRACT, TORT, AND DAMAGES** |
| Cleveland, Ohio 44122, | ) | |
| | ) | **(Jury demand endorsed hereon)** |
| **and** | ) | |
| | ) | |
| **POWER PIPING COMPANY** | ) | |
| 436 Butler Street | ) | |
| Etna, Pennsylvania 15223 | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MYR GROUP INC.** | ) | |
| **Three Continental Towers** | ) | |
| **1701 West Golf Road, Suite 1012** | ) | |
| **Rolling Meadows, Illinois 60008-4270,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **HARLAN ELECTRIC COMPANY** | ) | |
| **Rochester Hills, Michigan** | ) | |
| **2695 Crooks Rd.** | ) | |
| **Rochester Hills, MI 48309,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiffs PPC Ventures, Inc. ("PPC"), Teton Capital Group, LLC ("Teton") and Power

Piping Company ("Piping"), jointly plaintiffs, for their Complaint against defendants MYR Group

Inc. ("MYR") and Harlan Electric Company ("Harlan"), jointly defendants, state as follows:

## NATURE OF THE CASE

1.      This is an action to adjudicate the respective rights and liabilities of plaintiffs on one hand and defendants on the other hand under relative to the allocation of settlement expenses and defense costs and expenses incurred relative to *Lindsley v. U.S. Steel Corp.*, Allegheny County, Pennsylvania, C.P. No. 05-023535 ("the *Lindsley* litigation").

2.      The declaratory relief sought by plaintiffs is necessary to resolve an actual controversy between the parties, who possess adverse legal interests of sufficient immediacy and reality to warrant the exercise of this Court's jurisdiction to issue a declaratory judgment.

## THE PARTIES

3.      Plaintiff  Teton is incorporated in the State of Ohio and has its principal place of business in Cleveland, Ohio.

4.      Plaintiff PPC is incorporated in the State of Ohio and has its principal place of business in Cleveland, Ohio.

5.      Plaintiff Piping is incorporated in Pennsylvania and has its principal place of business in Etna, Pennsylvania.

6.      Defendant MYR is a Delaware corporation with its principal place of business in Rolling Meadows, Illinois.

7.      Defendant Harlan is a Michigan Corporation with its principal place of business in Rochester Hills, Michigan.

## JURISDICTION AND VENUE

8.     This Court has original subject matter jurisdiction over this civil action pursuant to

28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs, and is between citizens of different states.

9.     Further, as to the declaratory relief requested, there is a justiciable controversy

between the parties. This Court has original jurisdiction over the declaratory relief requested in this

civil action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

11.     On March 31, 2005 PPC's predecessor by merger (PPC Ventures LLC) entered into

a Stock Purchase Agreement ("SPA") with Harlan. The Stock Purchase Agreement was entered into

on March 31, 2005 (attached hereto as Exhibit A, and incorporated herein as if fully rewritten).

Under the terms of the SPA, PPC purchased from Harlan all the outstanding stock of Piping. In the

SPA, defendants represented to plaintiffs that no "self-insurance arrangements" existed as to Piping.

12.     PPC is a wholly owned subsidiary of Teton.

13.     Upon information and belief, Harlan is a wholly owned subsidiary of MYR.

14.     The SPA provided for, under certain circumstances, indemnification between the

parties to the SPA.

15.     On or about September 13, 2005 the *Lindsley* litigation was filed. Piping was not

named as a defendant at the time that the *Lindsley* litigation was filed.

16.     On or about November 21, 2005, the plaintiff in the *Lindsley* litigation filed his first

amended complaint adding a claim against Piping for the first time.

-3-

17.     Initially, neither defendant notified any plaintiff of the suit against Piping. Despite the fact that none of the defendants was individually named in the *Lindsley* complaint, defendants undertook steps to protect their interests. Defendants retained counsel on behalf of Piping, appeared and defended on its behalf, and began notifying its insurers of the suit.

18.     In early 2006, MYR first informed Piping of the *Lindsley* litigation. MYR represented that "Power Piping is responsible for the period April 1, 2005-May 26, 2005 approximately 56 days" and that MYR and/or Harlan is responsible for the remaining 98.39% of the *Lindsley* plaintiff's alleged damage(s).

19.     Throughout, MYR and Harlan were acting jointly and under joint direction and/or control, each with the knowledge and/or the acquiescence of the other.

20.     In reliance on the represented "56 days" of exposure of Piping, Piping agreed to joint defense counsel and to MYR's and/or Harlan's continued control the litigation and defense.

21.     In further reliance, Piping and/or PPC agreed to participate in a settlement of the *Lindsley* litigation that was reached based on representations by MYR and/or Harlan that Piping's (and PPC and Teton's) "share is 1.61%, and that's $8050.00. MYR has the rest of it."

22.     The settlement of the *Lindsley* litigation was drafted at the direction and control or MYR and/or Harlan and was drafted by their counsel with the intent of extinguishing the liability of MYR and/or Harlan relative to the plaintiff in the *Lindsley* litigation at, and pursuant to, MYR's and/or Harlan's express direction and control.

23.     The settlement of the *Lindsley* litigation included MYR and/or Harlan by its terms and released and extinguished any and all claims, including any and all claims for indemnity and/or contribution between defendants and plaintiffs, or any of them, relating to the *Lindsley* litigation.

-4-

24.     Following the settlement, Zurich billed MYR over $500,000 for defense costs and expenses incurred in the *Lindsley* litigation.   Zurich allocated the loss to Zurich Policy No. GLO8374154-11 at the direction or with the knowledge, consent, and/or acquiescence of MYR and/or Harlan.

25.     Zurich Policy No. GLO8374154-11 was issued to and insured solely MYR and/or Harlan, post dates the loss alleged in the *Lindsley* litigation, has never been made available to defendants, and is not part of the insurance coverage contemplated or referenced in the SPA as providing coverage for Piping and/or as subject to any indemnity provisions in the SPA.

26.     MYR and/or Harlan provided PPC and/or Teton with first "Seller Claim Notice" claiming entitlement to indemnity under the provisions of the SPA only after settlement of the *Lindsley* litigation.  MYR and/or Harlan demanded indemnity in excess of $500,000.

## FIRST CAUSE OF ACTION
### (For Declaratory Relief Against Both Defendants)

27.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 26 above as fully as though set forth herein.

28.     An actual controversy has arisen and now exists between plaintiffs, on the one hand, and defendants, on the other hand, concerning their respective rights and duties in connection with the settlement and defense expenses incurred relative to the *Lindsley* litigation.

29.     The indemnification provision(s) of the SPA providing for indemnification by the buyer (PPC) of the seller (Harlan) under certain circumstances are inapplicable to the settlement and defense expenses incurred relative to the *Lindsley* litigation for numerous reasons including, but not limited to, the following:

a.     MYR and/or Harlan breached the timely notice conditions precedent to

-5-

indemnity and/or contribution of the SPA by, including but not limited to, not providing notice to Piping until after assuming its defense, not providing notice to PPC or Teton until after consummating the settlement of the *Lindsley* litigation, not affording Piping, PPC, or Teton the option to assume the defense, settling the *Lindsley* litigation without any plaintiff's consent, and/or assuming control of the defense and settlement of the *Lindsley* litigation;

b.      MYR and/or Harlan were, with full knowledge and intent, settling their own potential and disputed liability in concluding the settlement of the *Lindsley* litigation and/or by choosing the terms of the settlement documents entered into in the *Lindsley* litigation and the indemnify and/or contribution terms of the SPA apply only to liability of Piping imposed on MYR and/or Harlan vicariously and without fault;

c.      Through the actions, representations, and/or omissions of MYR and/or Harlan by their agents, employees, assigns, and attorneys during the *Lindsley* litigation and the settlement thereof, which were reasonably relied upon by plaintiffs to their substantial detriment, MYR and/or Harlan waived and/or are estopped from enforcing any indemnity and/or contribution provisions in the SPA against defendants relative to the costs and expenses incurred in defending and settling the *Lindsley* litigation, and/or are barred from recovery under the SPA because the defendants, and each of them, acted as a volunteer(s) in controlling, defending, and settling the *Lindsley* litigation on behalf of plaintiffs, including, but not limited to, Piping;

d.      Defendants warranted to plaintiffs in the SPA that Schedule 3.8 to the SPA "describes any self-insurance arrangements affecting" Piping. Schedule 3.8 to the

SPA indicates that no "self-insurance arrangements" exist. Defendants materially breached the SPA and/or fraudulently induced plaintiffs to execute the SPA by representing the non-existence of "self-insurance arrangements" as to Piping while knowingly, willfully, wantonly, recklessly, and/or negligently failing to disclose the substantial deductibles and/or self-insured retention(s) under the primary insurance policies listed in Schedule 3.8 of the SPA which amount to "self-insurance arrangements." Due to this "inaccuracy and breach" of a "representation and warranty" under the SPA, defendants are obligated under the SPA to indemnify plaintiffs (rather than vice versa) relative to the *Lindsley* litigation and all subsequent litigation which would be covered by the primary insurance policies listed in Schedule 3.8 of the SPA but for the undisclosed deductibles and/or self-insured retention(s).

30.     In the alternative, MYR and/or Harlan through written and oral representations by their agents, employees, attorneys, and assigns, entered into a contract and/or novation superceding and modifying the SPA relative to the defense and settlement costs and expenses incurred relative to the *Lindsley* litigation under which contract and agreement defendant's liability was limited to 1.61% of the total defense and settlement costs and expenses incurred relative to the *Lindsley* litigation.

31.     Further, in the alternative, MYR and/or Harlan were parties to the settlement and release agreement entered into in the *Lindsley* litigation, at their direction and request, as former parent corporations of Piping. That settlement and release agreement superceded and/or was a novation of the SPA relative to the defense and settlement costs and expenses incurred relative to the *Lindsley* litigation. That settlement and release agreement released, extinguished, and forever

barred any claims for indemnity and/or contribution between plaintiffs as current parent corporations of Piping on one hand and defendants as past parent corporations of Piping on the other.

32.     For and including, but not limited to, all the above (including but not limited to equitable and/or promissory estoppel, accord and satisfaction, failure of condition precedent, reliance, novation, defendants acted as volunteer(s), agreement and contract, and/or waiver) plaintiffs request that this Court declare and adjudicate that none of them are liable to indemnify and/or contribute to either MYR or Harlan for any settlement or defense costs or expenses paid, incurred, due, and/or owning relative to the defense and settlement *Lindsley* litigation including cost and/or expenses for which MYR and/or Harlan may become liable for in the future.  And to further declare that defendants are obligated to indemnify plaintiffs relative to the *Lindsley* litigation and all subsequent litigation which would be covered by the primary insurance policies listed in Schedule 3.8 of the SPA but for the undisclosed deductibles and/or self-insured retention(s)

### SECOND CAUSE OF ACTION
#### (For Breach Of Contract Against Both Defendants)

33.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 32 above as fully as though set forth herein.

34.     In the alternative, defendants, and each of them, warranted to plaintiffs in the SPA that Schedule 3.8 to the SPA "describes any self-insurance arrangements affecting" Piping. Schedule 3.8 to the SPA indicates that no "self-insurance arrangements" exist. Defendants materially breached their warranty and representation under the SPA by failing to disclose the substantial deductibles and/or self-insured retention(s) under the primary insurance policies listed in Schedule 3.8 of the SPA which amount to "self-insurance arrangements."  Due to this "inaccuracy and breach" of a "representation and warranty" under the SPA, defendants are obligated under the SPA to indemnify

-8-

plaintiffs relative to the *Lindsley* litigation and all subsequent litigation which would be covered by the primary insurance policies listed in Schedule 3.8 of the SPA but for the undisclosed deductibles and/or self-insured retention(s).

35.     In the alternative, defendants, and each of them, offered to accept responsibility for the liability of Piping for the period of November 24, 1994 through March 31, 2005,  (amounting to 98.39% of the damages and defense exposure relative to *Lindsley* litigation) in return for good and valuable consideration from plaintiffs, including but not limited to, control of the *Lindsley* litigation (which was plaintiffs' right to the extent that the indemnity provisions of the SPA were triggered), plaintiffs forgoing their right to separate and independent counsel for Piping in the *Lindsley* litigation, and control over the terms, negotiation, and finalization of any settlement entered into relative to the *Lindsley* litigation, as well as plaintiffs' forgoing any and all rights accruing to them relative to the *Lindsley* litigation under the SPA.

36.     Defendants further contracted, covenanted, and agreed in the settlement and release agreement entered into relative to the *Lindsley* litigation, in return for reciprocal agreement by plaintiffs, that all rights and obligations of indemnity and/or contribution between plaintiffs and defendants relative to defense and settlement costs and expenses incurred relative to the *Lindsley* litigation are extinguished and forever barred.  This agreement modified and/or superceded and/or was a novation of the SPA to the extent it contained such obligations as between plaintiffs and defendants relative to the *Lindsley* litigation.

37.     These contract(s) and agreement(s) were memorialized in writing(s) signed by defendants by and through their attorneys, agents, employees and/or assigns.  Plaintiffs performed all material terms and conditions set forth in the agreement(s).

38.    The contract(s) and agreement(s) entered after the SPA were a modification and/or

novation of the SPA to the extent that they conflicted with the terms of the SPA.

39.    Defendants repudiated these contract(s) and agreement(s) by, among other things,

demanding that plaintiffs pay defendants' 98.39% agreed upon allocation of the settlement and

defense costs in the *Lindsley* litigation. Plaintiffs sought reconsideration, which defendants rejected.

40.    Due to defendants breach and/or anticipatory repudiation, plaintiffs are entitled to and

request that this Court order specific performance of these contract(s) and agreement(s) relative to

the apportionment of liability and extinguishment of rights of indemnity and contribution between

plaintiffs and defendants relative to the *Lindsley* litigation or, in the alternative, that defendants pay

plaintiffs damages and restitution in the amount of their indemnity obligation, if any, under the SPA.

## THIRD CAUSE OF ACTION
### (Fraud In the Factum And In The Inducement)

41.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 40 above as

fully as though set forth herein.

42.    On and before March 31, 2005, MYR and Harlan, by and through their agent William

A. Koertner (President of both companies) represented that Schedule 3.8 to the SPA "describes any

self-insurance arrangements" affecting Piping.   Schedule 3.8 discloses no self-insurance

"arrangements."  This representation was material inducement for plaintiffs to sign and enter into

the SPA.

43.    In fact, the insurance policies on Schedule 3.8 are subject to substantial, undisclosed,

deductibles and/or self-insured retention(s).  These deductibles and/or self-insured retention(s)

represent 50%, or more, of the liability limits of the primary policies identified on Schedule 3.8 of

the SPA, however, because defendants concealed the existence of these deductibles and/or self-

-10-

insured retention(s) during the negotiation and at the time of execution of the SPA (and continue to do so today), plaintiffs do not know the exact level of defendants self-insurance arrangements.

44.     Defendants intentionally, willfully, and/or with reckless disregard failed to disclose the existence of these deductibles and/or self-insured retention(s) with knowledge that plaintiffs were relying on full, complete, and honest disclosure of all self-insurance arrangements affecting Piping in entering into the SPA.

45.     Plaintiffs relied to their detriment by entering into the SPA at the price agreed upon and without obtaining insurance coverage for the deductibles and/or self-insured retention(s).

46.     Accordingly, plaintiffs ask that the SPA be reformed in equity to alleviate the effect of defendant's fraud in the inducement by removing the indemnity and/or contribution obligations of plaintiffs, if any, under the SPA, or, and in the alternative, for damages in the amount of plaintiffs' liability under the SPA, if any, to pay, indemnify, or contribute to the undisclosed deductibles and/or self-insured retention(s).

## FOURTH CAUSE OF ACTION
### (For Negligent Misrepresentation Against Both Defendants)

47.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 46 above as fully as though set forth herein.

48.     If the SPA requires any plaintiff to indemnify any defendant, Defendants had an independent duty at common law and otherwise to supply accurate information to plaintiffs relative to the apportionment of responsibility and liability relative to the *Lindsley* litigation.

49.     Defendants informed plaintiffs that MYR is responsible for the liability of Piping for the period of November 24, 1994 through March 31, 2005 relative to the *Lindsley* litigation.

50.     Defendants now assert that MYR is, in fact not responsible, but rather that PPC is responsible to indemnify MYR.

51.     To the extent that defendants negligently misrepresented the responsibility of MYR for Piping's liability, plaintiffs relied to their detriment by, among other things, not controlling the litigation and settlement of the *Lindsley* litigation and not retaining separate counsel relative to the *Lindsley* litigation.

52.     To the extent that plaintiffs are found to have any indemnity obligations(s) to defendants under the SPA, defendants are liable to plaintiffs for negligently misrepresenting the responsibility and liability of MYR relative to the defense and settlement of the *Lindsley* litigation.

53.     Defendants' negligent misrepresentations caused plaintiffs damages unknown at the present time but believed to be in excess of $500,000.

### FIFTH CAUSE OF ACTION
### (For Fraud Against Both Defendants)

54.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 53 above as fully as though set forth herein.

55.     If the SPA requires any plaintiff to indemnify any defendant, then defendants, their agents, employees, attorneys, representatives, and assigns, knowingly, willfully, wantonly, and/or with reckless disregard misrepresented the respective liabilities of defendants and plaintiffs relative to the *Lindsley* litigation and/or the availability and existence of insurance coverage for Piping:

a.      On February 15, 2006 MYR and Harlan, by and through their agent, employee, and representative Francis J. Barciak represented to plaintiffs that relative to the *Lindsley* litigation "Power Piping is responsible for [only] the period April 1, 2005-May 26, 2005 approximately 56 days." To the extent that the SPA requires

plaintiffs to indemnify defendants, this statement was knowingly false, or made with reckless disregard to its truth or falsity. The statement was intended to induce plaintiffs' reliance and did in fact induce their reliance.

b.      Anne Harman represented, on October 12, 2007, that plaintiffs' "share is 1.61% [of the settlement in the *Lindsley* litigation], and that's $8050.00. MYR has the rest of it." Anne Harman made this statement as MYR's and Harlan's attorney, assign, agent, representative, employee, representative, and/or at defendants' direction and/or with defendants' knowledge and acquiescence. To the extent that the SPA requires plaintiffs to indemnify defendants, this statement was knowingly false, or made with reckless disregard to its truth or falsity. The statement was intended to induce plaintiffs' reliance and did in fact induce their reliance.

c.      Defendants, and each of them, through William A. Koertner (Present of MYR and Harlan), on and before March 31, 2005, warranted and represented to plaintiffs in the SPA that Schedule 3.8 to the SPA "describes any self-insurance arrangements affecting" Piping. Schedule 3.8 to the SPA indicates that no "self-insurance arrangements" exist. Defendants knowingly, willfully, wantonly, and/or with reckless disregard to its truth or falsity represented the non-existence of "self-insurance arrangements" as to Piping while failing to disclose the substantial deductibles and/or self-insured retention(s) under the primary insurance policies listed in Schedule 3.8 of the SPA which amount to "self-insurance arrangements." The statement was intended to induce plaintiffs' reliance and did in fact induce their reliance.

-13-

56.     Additionally, defendants fraudulently failed to disclose deductibles and/or self-insured retention(s) under the primary insurance policies listed in Schedule 3.8 of the SPA. Relative to these facts, defendants had superior knowledge, or knowledge which was not within the fair and reasonable reach of the plaintiffs and which plaintiffs could not discover by the exercise of reasonable diligence. Further, defendant's representations as to allocation of liability relative to the *Lindsley* litigation were incomplete because defendants did not say enough to prevent the words from misleading the plaintiffs. Defendants were thus under a legal obligation to speak and their silence constitutes fraud because plaintiffs were relying upon defendants (and defendants knew, expected, and fostered that reliance through their communications and offer of joint defense) to communicate the true state of facts to enable plaintiffs to judge the expediency of the bargain and/or transaction.

57.    Plaintiffs relied on defendants' fraudulent misrepresentations and/or omissions to their substantial detriment by not obtaining insurance coverage for the deductible(s) and/or self-insured retention(s), allowing defendants to control the terms, conditions, and amount of the settlement of the *Lindsley* litigation and not retaining separate counsel. Defendants further relied by not seeking out all available insurance coverage available to Piping. Plaintiffs reserve their right to amend with other acts in reliance which plaintiffs have not yet discovered to have been improper due to defendants' fraud and ongoing concealment.

58.     Defendants' intended to profit by their fraud at plaintiffs' expense by allocating the *Lindsley* litigations expenses to the deductible of Zurich Policy No. GLO8374154-11 which provides no coverage for the *Lindsley* litigation or claim, insures only defendants, was not listed as an insurance policy covering Piping in the SPA, and provides coverage only after the effective date of the SPA. Thereby, defendants intended to fraudulently induce plaintiffs to pay the defendants' deducible under a policy which provides no coverage to plaintiffs.

59.     Defendants are liable for their fraudulent misrepresentation in an amount presently unknown but excess to plaintiffs' liability to defendants under the SPA, if any, plus plaintiffs' attorneys fees, costs and expenses.  Further, punitive damages should be awarded against defendants to punish them for their conduct and to compensate plaintiffs fully.

## SIXTH CAUSE OF ACTION
### (Breach Of The Implied Covenants of Good Faith and Fair Dealing)

60.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 59 above as fully as though set forth herein.

61.     Defendants were obligated under their several contracts with plaintiffs addressed above and, in addition, under the joint defense agreement relative to the *Lindsley* litigation to good faith performance and enforcement of a contract with emphasis on faithfulness to the agreed common purpose and consistency with the justified expectations of the plaintiffs.

62.     As part of defendants  duties of good faith and fair dealing they were obligated to disclose the existence of the deductible(s) and/or self-insured retention(s) under the primary policies of insurance identified in Schedule 3.8 to the SPA even if not required to do so under the express terms of the contracts at issue.

62.     Further, defendants were required not to unjustifiably hinder plaintiffs' performance of the contract(s).

63.     Defendants breached their duties of good faith and fair dealing under the various contracts by failing to disclose the existence of the deductible(s) and/or self-insured retention(s) under the primary policies of insurance identified in Schedule 3.8 to the SPA in a reasonable time and manner (or at all) in conjunction with the negotiation and execution of the SPA or the defense and settlement of the *Lindsley* litigation.

-15-

64.    Defendants further unjustifiably hindered plaintiffs' performance under the contracts by failing to disclose the policy deductible(s) and/or self-insured retention(s) which, to the extent of plaintiffs' indemnity obligations, if any, would have materially affected plaintiffs' obligations, performance, decision making process, and participation in the defense and settlement of the *Lindsley* litigation.

65.    Defendants interfered with plaintiffs' right to enjoy the fruits of the various contracts and the benefit of their bargain by failing to disclose the policy deductible(s) and/or self-insured retention(s) because if plaintiffs have vicarious liability, then they were unable to plan, control, allocate, or insure the defense and settlement costs and expenses incurred relative to the *Lindsley* litigation

66.    Defendants' breach of their duties of good faith and fair dealing have damaged plaintiffs in an amount presently unknown but in excess to plaintiffs' liability to defendants under the SPA, if any, plus plaintiffs' attorneys fees, costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For a judicial determination of the rights and duties of the parties under the SPA and subsequent agreements between the parties, including a declaration that no plaintiff owes any defendant indemnity relative to the defense or settlement costs and expenses of the *Lindsley* litigation;

2.    For a judicial determination and declaration that defendants are obligated to indemnify plaintiffs relative to the *Lindsley* litigation and all subsequent litigation which would be covered by the primary insurance policies listed in Schedule 3.8 of the SPA but for the undisclosed deductibles and/or self-insured retention(s);

-16-

3.    To the extent plaintiffs have made or are liable to provide contribution or indemnity for defense or settlement costs and expenses relative to the *Lindsley* litigation, monetary judgment against defendants;

4.    Specific enforcement of the contracts and agreements under which defendants agreed to pay the defense or settlement costs and expenses of the *Lindsley* litigation and warrantied the existence of primary coverage as specified in the SPA without any "self-insurance arrangements";

5.    To the extent that defendants misrepresented the existence of self-insurance arrangements as to Piping in the SPA to induce plaintiffs to enter that agreement, equitable reformation to reflect the intent and understanding of plaintiffs that Piping is afforded insurance coverage by third-party insurers, rather than having an arrangement of self-insurance through deductible(s) and/or self-insured retention(s);

6.    For punitive damages to punish defendants for their fraud and further compensate plaintiffs;

7.    For attorney's fees;

8.    For reasonable costs of suit; and

9.    For such other and further relief as the Court deems just and proper.

**PAUL J. SCHUMACHER** (0014370)
**MARK M. TURNER** (0075516)
**RICHARD C. O. REZIE** (0071321)
GALLAGHER SHARP
Sixth Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
(216) 241-5310 - Telephone
(216) 241-1608 - Telefax
pschumacher@gallaghersharp.com
mturner@gallaghersharp.com

-17-

rrezie@gallaghersharp.com

***Attorneys for Plaintiffs PPC Ventures, Inc., Teton Capital Group, LLC, and Power Piping Company***

## **JURY DEMAND**

Plaintiffs hereby demands a trial by jury of this lawsuit by the maximum number of jurors permitted by law.

**PAUL J. SCHUMACHER** (0014370)
**MARK M. TURNER** (0075516)
**RICHARD C. O. REZIE** (0071321)

-18-